**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

LISA BROADNAX,

      **Plaintiff.**

      **v.**                         **CIVIL ACTION NO. 2:04cv693**

THE DEPARTMENT OF VETERAN AFFAIRS
WASHINGTON  MUTUAL BANK

      **Defendants.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant Washington Mutual Bank's Motion for a Protective Order, and Motion to Dismiss or in the alternative Summary Judgment.  The issues have been fully briefed, the Court has conducted a hearing on the motion, and the issues are ripe for determination.

**I.  FACTUAL AND PROCEDURAL HISTORY**

The parties here have been involved in much litigation regarding the 2002 foreclosure on the home of *pro se* Plaintiff, Lisa Broadnax.  The dispute arose when Plaintiff (or "Debtor") filed a petition for bankruptcy under Chapter 13 of Title 11 of the United States Code in April 2002 after Defendant Washington Mutual Bank ("Washington Mutual")[1] sought to foreclose on the home.  The home had been purchased in August 1991 by Plaintiff, who assumed a prior mortgage that was guaranteed by the United States on behalf of its Department of Veterans Affairs ("VA").  Plaintiff missed at least one mortgage payment in March 1997.  Plaintiff filed for Chapter 13 protection with the United States Bankruptcy Court on September 19, 1997, just

---

[1]Washington Mutual became the successor-by-merger to Homeside Lending, Inc., the previous lender and holder of the deed of trust.

prior to the first scheduled foreclosure.  Plaintiff's bankruptcy case was later dismissed upon motion by the trustee.  Plaintiff filed for bankruptcy again in April 2000, prior to another scheduled foreclosure sale, with Defendant's claim of approximately $7,500.  On April 9, 2001, the Bankruptcy Court allowed Plaintiff additional time to make her required payments, but ordered that the matter would be dismissed upon any further late or incomplete payments to the trustee.  Plaintiff missed a payment and her bankruptcy case was dismissed in February 2002. Plaintiff filed a third Chapter 13 bankruptcy petition on April 16, 2002, along with a proposed payment plan indicating a pre-petition delinquency of $2,280.77 to Washington Mutual, $500 of which was for attorneys' fees. (Def't. Mot. to Dismiss at Ex. I.).  Washington Mutual and the trustee objected to the proposed payment plan.  A confirmation hearing was scheduled for July 30, 2002 to resolve the objections.

On June 25, 2002, the Bankruptcy Court held a Show Cause hearing to determine why Broadnax should not be held in contempt of court or her plan dismissed for her failure to timely pay her filing fee in installments.  Plaintiff failed to appear at the hearing.  On July 12, 2002, the Bankruptcy Court entered an order dismissing the case with prejudice for 180 days.  Broadnax subsequently filed a Motion to Vacate the dismissal claiming that she had not received notice of the June 25, 2002 hearing.  On July 22, 2002, while her Motion to Vacate was pending in the Bankruptcy Court, Plaintiff filed a Notice of Appeal.  She did not file a motion to extend the automatic stay on the foreclosure that had been in effect because of the bankruptcy filing.  On August 23, 2002, Washington Mutual foreclosed on the property, with the authorization of the VA.  On October 30, 2002, after a hearing, this Court remanded the matter back to the Bankruptcy Court for further proceedings on the Debtor's Motion to Vacate the dismissal.

2

On remand, the Bankruptcy Court held a hearing on December 10, 2002 on the Motion to Vacate.  At the hearing, the United States Trustee proffered that the Bankruptcy Court's notice to show cause may have gone to an improper address for the Debtor.  In addition, the Chapter 13 trustee requested that the Bankruptcy Court reinstate the bankruptcy and proceed to determine the total amount of Plaintiff's arrearage. (Def. Mot. for Summ. J. at Ex. X p. 4-5.)  At the hearing, the Plaintiff testified that she believed she owed less than the amount stated on her bankruptcy petition,[2] which she merely signed based upon Washington Mutual's and her attorney's calculations. (Ex. X at 18-24.)  Plaintiff was also ordered to produce receipts or proof of mortgage payments from September 1997 through December 2002, and Washington Mutual was ordered to produce verification of their proof of claim items.  Based on the United States trustee's  representation regarding the error in notice, the Bankruptcy Court granted the Motion to Vacate the dismissal order on December 23, 2002 and reinstated the case. (Def. Mot. for Summ. J. at Ex. Y.)  Because of the notice error, the VA allowed Plaintiff to maintain her residence on the property until the foreclosure was determined to be valid.  The Bankruptcy Court also ordered Washington Mutual to file an adversary proceeding to determine whether the foreclosure was valid.  Plaintiff was to continue to make her Chapter 13 plan payments to her trustee.  At the hearing, Plaintiff also represented that since the August foreclosure sale, Defendant had not

---

[2]Plaintiff's bankruptcy petition listed her arrearage as $2,280.77 including attorney's fees as of April 2002.  Washington Mutual filed a proof of claim in the amount of $6,376.65, consisting of 6 monthly mortgage payment they allege Plaintiff missed from November 2001 through April 2002 ($2,670), late charges ($267), property appraisal fees ($950), property inspection fees ($155.55), escrow shortage ($660.24), prior bankruptcy fees and costs ($950.46), and foreclosure fees and costs ($723.40).

3

accepted any mortgage payments because Ms. Broadnax no longer owned the home.[3]   The Court

stated, however, that Plaintiff should continue to make payments to escrow until the court

determined to whom the money would go.

On February 25, 2003, the parties came before the bankruptcy court for a status hearing

regarding Plaintiff's reorganization plan.   At that hearing, the trustee called Ms. Linda French, an

accountant, as an expert witness to testify regarding the charges Washington Mutual assessed to

Plaintiff.   Ms. French testified that she found eight total discrepancies in the accounting from the

past bankruptcies.   The discrepancies included charges lacking documentary support, and

payments Plaintiff made that were not credited in full to her account.   The court ordered

Washington Mutual to make available an internal auditor to explain their auditing process and

Plaintiff's account.

The Bankruptcy Court then held a hearing on March 18, 2003 upon Defendant's Motion

to Annul the Stay, or in the alternative to Declare that no Stay is in Place and that the foreclosure

was valid.   Defendant's Motion was denied, but the adversary proceeding was later filed to

determine the validity of the foreclosure, pursuant to the court's December 10, 2002 order.

On October 17, 2003, the Bankruptcy Court entered an opinion in the adversary

proceeding on summary judgment finding that though Plaintiff may not have received proper

notice of the June 2002 hearing, she did receive notice of the order of dismissal and should have

filed a motion to extend the stay pending appeal.   The court concluded that because there was no

stay in place, the August foreclosure was lawful and the foreclosure sale was upheld.   *Washington*

---

[3]Plaintiff had apparently continued to maintain insurance on the home, although she has
not made any mortgage payments since the foreclosure.   It is unclear whether she still maintains
that insurance.

*Mutual Bank, FA v. Broadnax*, No. 02-72575-DHA, APN 03-07084-DHA (Bankr. E.D. Va. Oct.

17, 2003).  Plaintiff did not appeal the court's decision.

Meanwhile, the original Chapter 13 proceeding had continued along with the adversary

proceeding.  After the October 17, 2003 order, the parties continued to file numerous motions,

and the trustee moved to dismiss the action on December 18, 2003.  The trustee's motion was

granted on April 20, 2004.  Plaintiff immediately appealed the dismissal.  Despite the dismissal,

Plaintiff continued to file several motions including a Motion to Determine the valuation of a

security interest, and a Motion for Summary Judgment.  The motions were denied, and the

Bankruptcy Court ordered that Broadnax must first obtain leave from that court before filing any

other pleadings related to the foreclosure.  A similar order was issued on November 20, 2004 in

the adversary proceeding, where Plaintiff had also continued to file motions despite the court's

summary judgment decision.

Plaintiff had maintained her residence at the property in question until the VA, through a

servicer, Ocwen Federal Bank, filed an Unlawful Detainer action against Plaintiff on September

23, 2004.  The General District Court for the City of Chesapeake awarded possession of the

foreclosed property to VA.  Subsequent to that proceeding, Plaintiff filed the instant Complaint

in state court, which the VA promptly removed to this Court on November 16, 2004.  The VA

filed a Motion to Dismiss on November 19, 2004 pursuant to Federal Rule of Civil Procedure

12(b)(6).  Defendant Washington Mutual filed a similar Motion to Dismiss on November 22,

2004.  Both parties included a *Roseboro* notice.  Plaintiff then objected to the removal, and

requested leave to file an amended complaint.

On February 4, 2005, this Court granted Plaintiff leave to file an amended complaint,

5

denied Plaintiff's objections to removal, and ordered Washington Mutual to either rely on its previous Motion to Dismiss or file an Answer or new Motion to Dismiss.  Plaintiff's Amended Complaint alleges violations of the Virginia Consumer Protection Act, defamation, breach of contract, and fraud by Washington Mutual.  Plaintiff essentially claims that Defendant purposely made misrepresentations to her about the amount she owed on her mortgage, that it failed to apply her payments towards her outstanding obligations, and that it applied illegal and excessive late fees and other penalties that did not apply.

Pursuant to Plaintiff's amendments, the VA was dismissed.  Defendant filed the instant Motion to Dismiss or in the alternative Summary Judgment on March 16, 2005.  In response to Defendant's Motion to Dismiss, Plaintiff filed a Motion to Quash Homeside Lending, Inc./Washington Mutual Bank's Motion to Dismiss and Grant Summary Judgment to the Plaintiff.[4]  Defendant also filed a Motion for a Protective Order on February 2, 2005, a Motion to Amend a previous pleading on March 29, 2005, and a Motion to Strike one of Plaintiff's pleadings on April 13, 2005.  The Plaintiff has filed a Motion to Remand this proceeding to state court.

The Court held a hearing on Defendant's Motion for Summary Judgment on April 22, 2005, limited to the issue of whether Plaintiff has sufficient evidence to meet the evidentiary burden on her breach of contract and fraud claims.  At the hearing, Plaintiff stated that she had submitted all relevant documents to the Court regarding those claims.

---

[4]Plaintiff filed a Response to Defendant's Motion to Dismiss after the deadline for such a filing.  The Response merely reiterated the same arguments advanced in her pleading entitled Motion to Quash.

## II.  LEGAL STANDARDS

### A.  Protective Order

A court can grant a protective order if required to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. of Civ. P. 26(c) (2004).  The moving party must show that it has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute, and show good cause for such an order. *Id.*  Attorneys practicing in this jurisdiction are governed by the Virginia Rules of Professional Responsibility. U.S. Dist. Ct. R. E.D. Va. 83.1(I) (2002).  The Virginia Rules of Professional Conduct prohibit ex parte communication between a lawyer and a party the lawyer knows to be represented by counsel. Va. R. of Professional Conduct 4.2 (2000).  If an organization is a party, the Rule prohibits communication only between a lawyer and the organization's "control group," which is any employee who, because of their status or position, has the authority to bind the organization. *Id*. (citing *Upjohn v. United States*, 449 U.S. 383 (1981)).

### B.  Motion to Dismiss or Summary Judgment

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A court will only grant a motion to dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982) (quoting *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969)).  Courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *Simons v. Montgomery County Police Officers*, 762 F.2d

30, 31 (4th Cir. 1985).  Further, on a motion to dismiss, the court must assume the truth of facts

alleged in the complaint. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

If the parties present and the court does not exclude matters outside the pleadings such as

documents and deposition transcripts, the motion to dismiss is treated as one for summary

judgment. Fed. R. Civ. P. 12(c); *Pueschel v. United States*, 369 F.3d 345, 354 n.3 (4th Cir. 2004)

(citing *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 n.7 (4th Cir.1988)).

Summary judgment shall be granted if the Court, viewing the record as a whole,

determines "that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin North*

*Amer., Inc.*, 252 F.3d 696, 700 (4th Cir. 2001) (citing *McKinney v. Bd of Trustees*, 955 F.3d 924,

928 (4th Cir. 1992)).  The movant bears the initial burden of "informing the district court of the

basis for its motion, and identifying those portions of [the record] which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 316, 324

(1986).  If the summary judgment movant satisfies this burden, the nonmoving party must then

present facts indicating there are genuine issues for trial, based upon affidavits, depositions,

answers to interrogatories, and admissions.  A genuine factual issue exists if there is sufficient

evidence favoring the nonmovant such that a jury could return a verdict in its favor.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoting *First Nat'l Bank of Arizona v. Cities*

*Serv. Co.,* 391 U.S. 253, 288-89 (1968)).  "If the [nonmovant's] evidence is merely colorable, or

is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-

50 (internal citations omitted).

**C.  Personal Jurisdiction**

A defendant to a civil action must be served either as provided by federal law, personal delivery or delivery to one's home, or as provided by state law. Fed. R. Civ. P. 4(e).  For a foreign corporation, Virginia law requires personal service upon: "(1) any officer, director, or on the registered agent of a foreign corporation which is authorized to do business in the Commonwealth; (2) by substituted service in accordance with §§ 13.1-766 or 13.1-928; (3) by substituted service in accordance with § 8.01-329; or (4) by order of publication if certain prerequisites are met." Va. Code § 8.01-301 (2000).  Under Rule 12(b)(2) of the Federal Rules of Civil Procedure a complaint may be dismissed for lack of personal jurisdiction, unless Plaintiff can show good cause for the Court to extend the time allowed for proper service.

### III.  DISCUSSION

**A.  Protective Order**

The Defendant, Washington Mutual moves for a protective order to prohibit Plaintiff from contacting employees of the bank except through counsel.  The Defendant argues that Plaintiff has served pleadings upon and directed correspondence to employees of Washington Mutual rather than to their counsel in the matter.  Defendant argues that Rule 4.2 of the Virginia Rules of Professional Conduct, which prohibits communication from a lawyer to a represented party, applies to Plaintiff, a *pro se* litigant.  Despite the hassle required for Washington Mutual employees to direct communications to Defendant's counsel, Defendant does not argue that counsel has not received any filings or other correspondence.  Plaintiff argues that a protective order would be overly broad and that she does not know if counsel truly represents Defendant.  The Defendant has not made a sufficient showing that a protective order is necessary to prevent

annoyance, embarrassment, oppression, or undue burden or expense.  In fact, Defendant has not

even argued that it is subject to any of these effects.  Thus, Defendant's Motion for a Protective

Order is **DENIED**.

## B.  Motion to Quash

Plaintiff has responded to Defendant's Motion to Dismiss with a Motion to Quash

Defendant's pleading.  Plaintiff's motion is unaccompanied by a brief as is required by the local

rules.  Furthermore, she offers no basis for the motion and seems to merely object to Defendant's

arguments.  Plaintiff's Motion to Quash is therefore **DENIED**.

## C.  Motion to Dismiss/Summary Judgment

Washington Mutual argues that this matter should be dismissed on several different

grounds, or in the alternative that the Court should grant summary judgment.  Defendant has

attached numerous exhibits including excerpts of transcripts from prior proceedings, previous

court opinions, and documents.  Accordingly, the Court will treat the entire 12(b)(6) motion as a

motion for summary judgment.

### 1.  Personal Jurisdiction/Service

Defendant Washington Mutual asserts that Plaintiff served the bank's lawyer, not an

officer, director, or registered agent as required by Virginia law.  Plaintiff has not responded to

Defendant's assertion.  Plaintiff's complaint, however, indicates that service was rendered upon

"Steven Zahn, Esq. Counsel for Washington Mutual Bank."  Service upon a corporation's

counsel is only proper if such counsel has authority to accept process.  *Davies v. Jobs & Adverts

Online, Gmbh,* 94 F. Supp. 2d 719, 722 (E.D. Va. 2000).  An agent's authority to accept service

can be implied from facts, but "the mere relationship between a defendant and his attorney does

not, in itself, convey authority to accept service." *Id*. (quoting *United States v. Ziegler Bolt and Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997)).  In order for service upon a corporation's attorney to be valid, the Plaintiff must show that counsel exercised authority beyond the attorney-client relationship. *Id.*  Plaintiff has presented no evidence of counsel's authority beyond the attorney-client relationship, nor has she offered any evidence to refute Defendant Washington Mutual's claims of improper service.

The fact that Plaintiff proceeds *pro se* is of no consequence.  A Plaintiff's *pro se* status does not alleviate the procedural requirement of proper service upon a defendant. *McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001) (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")).  Plaintiff has thus far failed to comply with the procedural requirements of this Court.  The Complaint was filed on or about October 15, 2004, and thus Plaintiff's time to properly serve Defendant Washington Mutual has expired. *See* Fed. R. Civ. P. 4(m) (requiring service within 120 days of the filing of the complaint).  Ordinarily, in federal courts, a plaintiff must show good cause for her failure to comply with the rules governing service.  Yet, since this action was commenced in state court, the Court must follow the state rules regarding improper service. *See Londeree v. Crutchfield Corp.*, 68 F. Supp. 2d 718, 722-23 (W.D. Va.. 1999) (applying Virginia law).

Under federal law, the fact that Defendant Washington Mutual has actually received the Complaint does not alleviate Plaintiff's duty to fulfill the requirements of Rule 4. *See Armco Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087 (4th Cir. 1984); *Maryland State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353 (D. Md. 1996).  Under Virginia law, however, if the defendant

receives service, though it was not served as required by law, the service is deemed sufficient. Va. Code § 8.01-288 (2000).  Here, the Defendant did actually receive the Complaint, or at least the Amended Complaint,[5] in a timely matter.  As such, the savings provision of the Virginia statute applies, and service is proper. *See Lesner Pointe Condo. Ass'n v. Harbour Point Bldg. Corp.*, Va. Cir. 609 (Va. Cir. Ct. 2002) (finding savings provision did not apply when service sent to counsel and Secretary of the Commonwealth because there was no evidence that the defendant actually received the filing).  The Court finds that jurisdiction over Defendant Washington Mutual is proper.

### 2. Statute of Limitations

The Defendant states that Plaintiff's claims for defamation, fraud, and violations of the Virginia Consumer Protection Act are barred by the two-year statute of limitations for those claims.  A suit brought pursuant to the Virginia Consumer Protection Act of 1977, Va. Code §§ 59.1-196 to -207, must be brought within two years of the plaintiff's injury. Va. Code § 59.1-204.1 (2001) (referencing Va. Code § 8.01-230).  The Plaintiff claims that Defendant Washington Mutual violated the Consumer Protection Act by "wrongfully and deceitfully charging her suspense payment, illegal late charges, fee assessments, corporate fees, charging for appraisals and home inspections not performed and providing an appraisal which was 15 years old to establish a low sales price."  As an injury, Plaintiff claims that she was forced to pay over $13,000 to the trustee, and she had to file for bankruptcy.  Defendant argues that any cause of action under the state statute accrued on or before the foreclosure.

---

[5]In Defendant's Memorandum in Support of its Motion for Protective Order, the Defendant states that the Amended Complaint was sent directly to Washington Mutual rather than counsel for the bank.

Defendant Washington Mutual foreclosed on Plaintiff's home on August 23, 2002 after some litigation in the bankruptcy court.  The conduct that Plaintiff alleges gives rise to a cause of action all occurred prior to the foreclosure, as Defendant argues.  Even if the Court were to find that the unlawful detainer action, by which the VA finally acquired possession of the property, constituted a further injury, that action was initiated by the VA, not Washington Mutual.  On the basis of the facts presented by both the Plaintiff and the Defendant, Washington Mutual has not engaged in any conduct subsequent to the foreclosure suit that could give rise to Plaintiff's Consumer Protection Act claim.  Accordingly, Plaintiff was required to file a complaint alleging such a violation on or before August 23, 2004.  Plaintiff's complaint was filed in the Chesapeake Circuit Court on or about October 15, 2004.  Accordingly, the statute of limitations bars Plaintiff's claim under the Virginia Consumer Protection Act, and Count I of her amended complaint is **DISMISSED**.

Defendant Washington Mutual also argues that the statutes of limitations bar Plaintiff's claims for defamation and fraud.  Defamation has a statute of limitations of one year from the date of the accrual of the cause of action. Va. Code § 8.01-247.1.  Fraud has a statute of limitations of two years from the date of the accrual of the cause of action. Va. Code § 8.01-243(A).  In both cases, the cause of action accrues on the date of the injury to the person or property. Va. Code § 8.01-230.  On the defamation claim, Plaintiff provides no dates, but instead merely states that Defendant "habitually disseminated derogatory communications" about Plaintiff to its employees and national credit reporting agencies.  Though Plaintiff has not provided the relevant dates of the alleged defamation, the Defendant has the burden of proving this affirmative defense. Fed. R. Civ. P. 8(c).  In addition, though all of the documents Plaintiff

attaches are dated more than one year before this claim was brought, Defendant has not shown that no allegedly defamatory statements were sent to the credit agencies after the foreclosure, or within one year of the present lawsuit.  Accordingly, absent further evidence from Defendant, Plaintiff's defamation claim is not presently barred by the statute of limitations.

Finally, Defendant claims that Plaintiff's fraud action is barred by the two year statute of limitations.  Plaintiff claims that Washington Mutual committed fraud by failing to disclose the proper amount Plaintiff owed on her home loan, and that Defendant "continues to engage in the acts complained of in [her] Complaint." (Am. Comp. at ¶ 86.)  Defendant has the burden of showing that all of the allegedly fraudulent misrepresentations were not made within two years of this litigation.  Defendant has not met this burden given Plaintiff's allegations that the misrepresentations persist.

### 3.  Failure to State a Claim

The Defendant argues that Plaintiff does not state a claim for defamation and fraud because the Amended Complaint lacks the specificity required by Virginia law.  For a claim of defamation, a plaintiff is required to plead the exact words allegedly spoken or written. *Federal Land Bank v. Birchfield*, 3 S.E.2d 405, 173 Va. 200, 215 (1939) ("good pleading requires that the exact words spoken or written must be set out in declaration *in haec verbe*."); *Fuste v. Riverside Healthcare Ass'n*, 575 S.E.2d 858, 862, 265 Va. 127 (2003).  The Plaintiff states only that defamatory communications were maintained in Defendant's loan file and disseminated to credit agencies.  Plaintiff fails to identify any specific written statements by Defendant that could support a defamation claim.  Furthermore, the Court has already allowed Plaintiff an opportunity to amend her complaint well beyond the time specified for an amendment as of right.  Thus,

Plaintiff's claim for defamation is **DISMISSED** for failure to state a claim.

Defendant also states that Plaintiff fails to plead the elements of fraud with the requisite particularity.  On a claim of fraud, the pleading must be particular so that the defendant has the opportunity to shape his defense accordingly. *See Mortarino v. Consultant Eng'g Serv.*, 467 S.E.2d 778, 782, 251 Va. 289, 295 (1996).   To prove actual fraud, a plaintiff must allege and prove by clear and convincing evidence: 1) a false representation, 2) of a material fact, 3) made intentionally and knowingly, 4) with intent to mislead, 5) reliance by the party misled, and 6) resulting damage to the party misled. *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390, 247 Va. 143, 148 (1994).   In addition, a complaint must specify the facts out of which the fraud arises, including the identity of the person or persons making the misrepresentations and the date and time that they were made. *Devansky v. Dryvit Systems, Inc.*, 52 Va. Cir. 359 (Va. Cir. Ct. 2000).  Plaintiff alleges that Defendant misrepresented the status of her loan payments, which caused her to believe she owed money when she did not.  Plaintiff further states that Defendant made these representations to credit agencies, whose reports she relied upon when filing her several bankruptcy petitions.  She also states that she relied upon the misrepresentations when she paid money that was not otherwise owed.  Although Plaintiff does not state the exact dates and times at which the misrepresentations were made, she has sufficiently identified the parties and content of the representations to allow Defendant to fashion a proper defense.  Thus, Plaintiff's fraud claim does not fail for lack of specificity.

### 4.  Collateral Estoppel/ Res Judicata

Defendant Washington Mutual moves for Summary Judgment in the alternative on the grounds that Plaintiff's claims of fraud, breach of contract, and defamation are barred by the

doctrines of res judicata and collateral estoppel.  A defendant seeking to assert res judicata must prove four factors: 1) the parties have privity; 2) the cause of action is identical; 3) the remedies sought are identical; and 4) that there was a final judgment on the merits. *See Bates v. Devers*, 202 S.E.2d 917, 920, 214 Va. 667 (1974); *Dotson v. Harman*, 232 Va. 402 (1986).  Collateral estoppel precludes the relitigation of issues actually litigated and determined in a prior suit, regardless of whether it was based on the same cause of action. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326 n. 6 (1955)); *Bates*, 202 S.E.2d at 922, 214 Va. at 672.  To apply collateral estoppel, the defendant must prove: 1) the parties to the prior and subsequent proceedings have privity, 2) the factual issue actually was litigated in the prior action, 3) the issue was essential to the prior judgment, and 4) the prior action resulted in a judgment that is valid, final, and against the party against whom the doctrine is sought to be applied. *Scales v. Lewis*, 541 S.E.2d 899, 901, 261 Va. 379, 382 (2001) (citing *Angstadt v. Atlantic Mutual Ins*., 457 S.E.2d 86, 87, 249 Va. 444, 446-47 (1995)).

Washington Mutual argues that Plaintiff's claims of fraud, breach of contract, and defamation were previously raised in Plaintiff's Motion to Vacate Dismissal of her bankruptcy proceeding.  Plaintiff's motion was filed upon receiving notice that the bankruptcy proceeding had been dismissed for her failure to appear at the June 25, 2002 hearing.  In Plaintiff's Reply to Washington Mutual's Response, she states that Defendant engaged in fraudulent activity. (Def.'s Mot. to Dismiss at Ex. W.)  Defendant apparently relies first upon this statement to claim that *res judicata* is warranted on the claim of fraud.  Yet, Plaintiff's mere allegation in a motion that there was fraudulent activity cannot form the basis of a *res judicata* finding.  The doctrine requires a final judgment on the same cause of action.  Here, Plaintiff did not even have a fraud cause of

action.

Defendant also claims that Plaintiff raised a fraud claim in another bankruptcy proceeding.  Specifically, in Plaintiff's brief in support of her appeal of the Bankruptcy Court's July 12, 2002 dismissal order, Plaintiff argues that Defendant engaged in a fraud on the court. (Def. Mot. for Summary J. at Ex. R p. 4.)  Though Plaintiff did raise the issue of fraud in her argument, Defendant offers no evidence that the United States Court of Appeals for the Fourth Circuit even considered that argument.[6]  Defendant has offered no proof that her allegations of fraud were ever considered on appeal, much less that the issue was essential to any final order of that court.

Defendant next claims that the collateral estoppel should apply because the issue of breach of contract was decided in Plaintiff's adversarial proceeding initiated on August 17, 2003 pursuant to Bankruptcy Rule 7001 to decide the validity of a creditor lien.  The adversarial proceeding was ultimately dismissed on October 30, 2003 upon finding that the issues were moot because of the Plaintiff's failure to appeal the Bankruptcy Court's October 17, 2003 order granting summary judgment for the Defendant.  In the October 17, 2003 opinion, the Bankruptcy Court was considering the validity of the foreclosure and ultimately found that the foreclosure was valid.  Plaintiff did not timely appeal the court's decision.  Defendant claims that the Bankruptcy Court's October 17 and October 30, 2003 opinions were final judgments that serve to preclude Plaintiff from raising the issues she raises here.

---

[6]The document submitted by Defendant indicates that Plaintiff's appeal was filed on August 1, 2002 and directed to the United States Court of Appeals for the Fourth Circuit.  Yet, this Court did receive an appeal of the dismissal order because it eventually remanded the matter in October 2002.

The Court has considered both the Bankruptcy Court's opinion, and the procedural history of this case, and though the validity of the underlying liens was relevant to the prior court's actions, it was not the subject of the adversarial proceeding as required for collateral estoppel to apply.  In the October opinion, the Bankruptcy Court found only that the foreclosure was valid because Washington Mutual proceeded when no stay was in place.  Thus, while the foreclosure was procedurally valid, the court did not seemingly rule on whether the underlying liens upon which the foreclosure was based were valid.  In its opinion, the court cited several cases stating that if no stay is in place, the court cannot grant any relief. *In re Broadnax*, No. 02-72775-DHA at *6 (Oct. 17, 2003) (citing *Riley v. United States*, 2000 WL 1862891, *3 (W.D. Va.) and *Matter of Sullivan Central Plaza I, Ltd.*, 914 F.2d 731, 733 (5th Cir. 1990)).  Yet, the fact that a bankruptcy court cannot grant any relief such as to rescind the foreclosure sale does not necessarily mean that Plaintiff cannot obtain monetary relief by other means.  *See e.g.*, *Riley v. Robey*, 25 Fed. Appx. 149 (4th Cir. 2002).  In *Riley*, the court was faced both with an appeal from the bankruptcy court on the validity of a foreclosure sale, as well as an appeal of the debtor's separate suit regarding alleged violations of Virginia law.  *Id.*  Similarly, Plaintiff's breach of contract and fraud claims here are based on Washington Mutual's alleged inaccurate accounting of fees Plaintiff owed.  The procedural validity of the foreclosure is not relevant to that underlying question.  The law is clear that the Court cannot render either the foreclosure invalid or any of Defendant's subsequent acts based upon that valid foreclosure invalid, it is not clear that the Court could not otherwise find Defendant liable for the actions for which Plaintiff seeks compensation.  The Court also cannot rely on Plaintiff's unconfirmed bankruptcy plan for collateral estoppel to apply.  Although a confirmed plan does bind both the debtor and creditors,

18

11 U.S.C. § 1327(a), there is no precedent for applying either res judicata or collateral estoppel to Plaintiff's unconfirmed plan. *See Piedmont Trust Bank v. Linkous (In re Linkous )*, 990 F.2d 160, 162 (4th Cir. 1993). The Court therefore finds that Plaintiff's claims for breach of contract and fraud are not barred by either the doctrines of res judicata or collateral estoppel.

### 5. No Genuine Issues of Material Fact

Defendant argues that Plaintiff has failed to dispute any facts, and has offered insufficient evidence to support her claims on summary judgment. Plaintiff's only remaining claims are for breach of contract and fraud. For both of these claims, Defendant argues, supported by evidence, that no genuine issue of material fact exists as to whether any amounts were owed and as to whether any material misrepresentations were made. Thus, in order to defeat summary judgment, Plaintiff must introduce some evidence that genuine issues of material fact remain on her fraud and breach of contract claims.

On the breach of contract claim, Plaintiff essentially alleges that Washington Mutual has imposed or collected fees that Plaintiff did not owe, and that Plaintiff has overpaid approximately $19,000 towards her mortgage. In addition, Plaintiff argues that Defendant has failed to apply payments she made towards any outstanding obligations. Defendant offers evidence from the former bankruptcy not only of Plaintiff's default, but of a proposed Chapter 13 plan for Plaintiff to repay the debt. (Def't Mot. to Dismiss at 8 and Ex. I.) Plaintiff herself filed the bankruptcy petition acknowledging a pre petition delinquency of $2,280.77. However, she now claims that the bankruptcy petition was in error, and that she did not owe that amount. Plaintiff also introduces evidence from the February 2003 hearing in Bankruptcy Court. There, the court acknowledged that the parties had an outstanding dispute as to the amount of money Plaintiff

owed, and was charged by Defendant. (Pl. Am. Compl. at Ex. 11.)  At the hearing, the Chapter

13 trustee produced an expert witness who testified to several discrepancies she found in

Defendant's accounting.  Ms. French had performed an audit and testified that she was not able

to verify all of the costs Defendant claimed to have incurred because there was insufficient

documentation of some of the charges. (Ex. 11 at 33.)  She testified about eight specific

discrepancies in the accounting: 1) that Defendant applied payments to late charges rather than

interest on the loan, 2) that trustee payments were sometimes not posted until well after their

issuance, 3) that Defendant posted lesser amounts than the trustee actually paid, 4) that the proof

of claim costs were less than the costs listed on the payment history, 5) that Defendant failed to

allocate some of Plaintiff's payments towards her debt, 6) that costs in the 2000 case were

overstated, 7) that Defendant misapplied trustee payments, and 8) that Plaintiff's breakdown of

payments was not the same as the breakdown on her response.  From Ms. French's testimony

alone, it is unclear which discrepancies were resolved subsequent to the hearing.[7]

Despite the accountant's testimony from February 2003, at all relevant times Plaintiff had

an outstanding delinquency on her mortgage.  She has repeatedly contested the amount of that

delinquency, but has offered insufficient evidence to meet her burden on summary judgment.  On

a summary judgment motion, Plaintiff must present sufficiently probative evidence indicating

there are genuine issues for trial, such as affidavits, depositions, answers to interrogatories, and

admissions. *Anderson*, 477 U.S. at 249-50.  Plaintiff's sole piece of evidence supporting her

claim are several pages of excerpts from the February 2003 hearing.  However, most important,

---

[7]Plaintiff has produced several pages of the hearing transcript, but not the entire transcript.  Furthermore, at the hearing, she stated that she had submitted all of the evidence she had pertaining to her case.

of the eight discrepancies detailed in those excerpts, none relate to Plaintiff's most recent

bankruptcy filing.  Most of the discrepancies deal with accounting issues from the 1997

bankruptcy, and some from Plaintiff's 2000 bankruptcy.  Plaintiff's second Chapter 13

bankruptcy plan was confirmed by the Bankruptcy Court on August 15, 2000.  Plaintiff was

represented by counsel in that proceeding and successfully made payments on the court approved

plan.  To the extent she raises any discrepancies or alleged breaches from before 2000, the

Bankruptcy Court necessarily resolved those matters before the plan was confirmed.  No

discrepancies are listed after November 2001, which is the delinquency upon which Plaintiff's

most recent bankruptcy filing was based.  Thus, the hearing transcript is insufficient evidence on

summary judgment to raise a genuine issue of fact as to Plaintiff's breach of contract claim.

Such evidence is not sufficient to show any current erroneous accounting.  Plaintiff has not

produced any evidence of any post-foreclosure debt, much less any evidence of any current

outstanding debt.  She presents no payments stubs or returned checks to support her claims of

overpaying, nor even a breakdown of which late fees she contests.  The Court therefore finds that

Plaintiff has failed to meet the evidentiary burden on her breach of contract claim, and

Defendant's Motion for Summary Judgment is **GRANTED**.

Defendant also alleges that no genuine issues of material fact exist on Plaintiff's fraud

claim.  Plaintiff claims that material misrepresentations were made to her on behalf of

Defendant's collections department regarding the status of her payments and loan account.  In

addition, she states that Defendant procured a fraudulent deed transferring the property from the

Veterans Administration[8] to Washington Mutual.  Defendant states that Plaintiff missed a

mortgage payment on March 1, 1997, and it responded as mandated by law in initiating a

foreclosure proceeding.  Plaintiff does not dispute Defendant's assertion, offers no evidence to

refute Defendant's evidence, and offers no specific dates nor the substance of the alleged

misrepresentations.  As Defendant has met its burden of showing that Plaintiff was in default on

her mortgage, and Plaintiff has not otherwise articulated any misrepresentations Defendant made,

Plaintiff must offer evidence in opposition.  Furthermore, to prove actual fraud, a plaintiff must

prove by clear and convincing evidence: 1) a false representation, 2) of a material fact, 3) made

intentionally and knowingly, 4) with intent to mislead, 5) reliance by the party misled, and 6)

resulting damage to the party misled. *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387,

390, 247 Va. 143, 148 (1994).  Despite that fact that Plaintiff offers insufficient evidence that

Defendant misapplied some of her mortgage payments, and overcharged her, Plaintiff has offered

no evidence that Defendant acted intentionally, which is required for a claim of fraud.  Plaintiff

has stated no claim for constructive fraud, and thus must show that any misrepresentation was

intentional. *See Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999).

On summary judgment, Plaintiff must introduce sufficiently colorable evidence to support her

fraud claims.[9]  While her mere allegations are sufficient to survive a motion to dismiss, Plaintiff

has failed to meet her burden to avoid summary judgment.  Accordingly, Defendant's motion for

summary judgment is **GRANTED** on the fraud claim.

---

[8]The Veterans Administration was formerly a party to this litigation.  They were dismissed, however, upon the Plaintiff's request.

[9] Plaintiff argues that Defendant as well as the Veteran Affairs have denied her access to the proper documents.  She does not offer any specifics regarding this argument.

**D.  Motion to Strike**

Defendant filed a Motion to Strike on April 13, 2005 challenging one of Plaintiff's pleadings.  Defendant contends that Plaintiff has responded twice to the same motion.  Plaintiff has indeed completely disregarded the filing rules of this Court.  She has filed documents late, submitted several memoranda unattached to any motion, and filed several motions unaccompanied by a brief.  She has failed to submit certificates of service with the Court, and failed to adhere to the orders of the Court regarding issues that have already been decided.  However, as Plaintiff's claims have all been dismissed, Defendant's Motion to Strike is dismissed as **MOOT**.

**E.  Motion to Amend**

Defendant moves to Amend a previous submission regarding jurisdiction in the federal court.  As Defendant's Motion to Dismiss or in the alternative for Summary Judgment has been granted on all counts, Defendant's Motion is dismissed as **MOOT**.

**F.  Motion to Remand**

Plaintiff moves to remand this case to state court on the grounds that removal was improper.  The Court has already considered the issue and found that jurisdiction is proper.  Accordingly, Plaintiff's Motion is **DENIED**.

## IV.  CONCLUSION

Based on the foregoing reasons, Defendant's Motion for a Protective order is **DENIED**.  Plaintiff's Virginia Consumer Protection Act claim is **DISMISSED** because the claim was filed outside the statute of limitations.  The defamation claim is **DISMISSED** for failure to state a claim.  Defendant's Motion for Summary Judgment is **GRANTED** on Plaintiff's fraud and

breach of contract claims because there are no genuine issues of material fact.

Plaintiff's Motion to Quash Defendant's Motion to Dismiss is **DENIED**.  Plaintiff's

Motion to Remand is **DENIED**.

Defendant's Motion to Strike Plaintiff's pleading is dismissed as **MOOT**.    Defendant's

Motion to Amend is dismissed as **MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Plaintiff and counsel

for the Defendant.

**IT IS SO ORDERED**.


_____/s/_____
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 19 , 2005